All right. We're ready then. So, Mr. Buck, please state your appearance and we're ready to hear from you. May it please the Court, Joshua Buck on behalf of appellants plaintiffs in this case. As we discussed, I have ceded six minutes of my time to Ms. Frances Ma with the United States Department of Labor, and I'd like to reserve three minutes of my time for rebuttal. Well, let's hope you have three minutes left. Thank you, Your Honors. This appeal concerns a district court opinion that held that the time spent booting up and logging on and booting down and logging out of computers is non-compensable. Appellants submit that the district court erred in analyzing whether or not the time spent performing these activities was compensable and failed to correctly use the standard that was recently set forth by Justice Thomas in the United States Supreme Court case of integrity staffing v. Busk. Let me ask you to go to the Ninth Circuit here. A case that I was involved in previously, can you address the Ninth Circuit decision in Rudy v. Lojack where we held that a vehicle technician's morning activities that included time spent logging on a handheld computer device that informed him of his jobs for the day were non-compensable. And so why shouldn't we apply the same reasoning here? First, Rudy v. Lojack was prior to integrity busk, which is the U.S. Supreme Court's new guidance on how to determine preliminary and post-preliminary time. Second, the issue in Rudy with respect to the commute and what the court held in that case was that finding the route to be able to determine an employee's commute to the first assignment was not compensable because an employee is not employed to find a route to go to the first assignment. The critical distinction we can find here is contained within integrity v. Busk. In that case, Justice Thomas said that we need to look and see what is the principal activity for which the employee is employed to perform. Can I ask you a factual question? Suppose that they had shifted to a manual or time card method of recording time so that the computer did not need to be turned on to record time. Would they still have needed to return to turn on the computer to perform their job functions? If I understand your honor's hypothetical, if the employer decided to install a time clock, your honor, and have the time clock be the point of which... Right, so we take out the time recording aspect of this case. So say that Connex comes up with a different system of recording the time that takes it completely out of this. Would they still need to turn on the computers to perform their jobs? Yes, your honor. Of course they would. Their entire job as a call center employee here at this particular employer revolves around the computer. As this Court is well aware, we deal with the facts of a particular case. In this case, we have call center employees who field calls, schedule appointments. That's their job. That's their principal activity. The calls come through the computer. They are only operational. They can only receive calls once the computer is fully booted up, updated, if needed to be updated, and fully operational with all of the scheduling programs in place. That's the critical distinction in this particular case. This is not as if back in the so-called older days where you would have a hard phone that you would be answering calls with without the use of a computer. Here, by its very nature in the way that Customer Connects has designed the system, Customer Connects employees must boot up their computer, load the program, load what's called the 5-9 system, open up their scheduling software in order for them to be, quote, unquote, call ready at the time of their scheduled shift. Now, what plaintiffs believe is that this indeed, the computer, in this particular case, is so intertwined with the call center employee that any kind of preparation, preparing the computer to be able to serve and carry out their duties must be compensable. Well, computers are so intertwined with everything that we do. And so even though you say we get very fact-specific, I'm concerned about how, if we come up with a rule here, how that rule can be cabined in a way that employers would understand it because there's so many people, particularly post-COVID, that work at home, they have to use their computer to do their work, but they're maybe not a call center. So does your rule apply to those people too because they can't do their job without booting up their computers? Well, certainly if the computer is a, again, but you can't work at home without a computer for the most part. That's just the reality. You can't really work now if you can't use a computer. Well, my response, Your Honor, would be that if the computer falls in line with our tests that Justice Thomas set forth in integrity staffing, then yes, the time spent booting up and booting down a computer and loading various programs should be compensable, and employers should, and many times very well do, pay for this time. They pay for this time by either having employees separately punch in by a manual time clock or they do it by having employees manually enter their time and instruct the employees to manually enter their time from the time when they begin with the computer. Well, okay, but everyone wants to telecommute now. No one wants to come to the office. So they go home and they have to have their computer and they start doing things, and then during that time period, and so say they have to clock in, but during that time period they don't clock out when they go put a load of wash while they're working from home and all of that. So I always like to think fairness is inherent to being a judge, and rules in terms of with people that want to telecommute is, I'm having a hard time cabiting your role. I see. I know you're in your time, but answer my question, and you'll get whatever time we decide you have left if we want to hear your answers. Well, in your hypothetical, Your Honor, with respect to telecommuting, obviously any activities that happen during the continuous period of work, the continuous workday, which is defined in Alvarez, the United States Supreme Court, has to be compensated. For example, if an employee at a typical factory decides to go out and take a bathroom break, even though that is not productive time for which the employee is employed to be at the job, they'd have to pay them for that time. If there is time, however, that exceeds a certain amount, like a meal break, for example, something over 30 minutes, then that would not be deemed to be compensable time. With the telecommute example, the employer could and very well may monitor the employee's time spent on the computer at home and may very well have a policy in place that says that if you are away from the computer for more than, let's just say, 20 minutes, we deem that to be non-compensable meal break. And under the FLSA, that would be sufficient time for a non-compensable meal break. I see my time is up. Well, as of now, I'll give you two minutes for rebuttal. All right. But I want to make sure. Do either of my colleagues want to ask Mr. Buck any additional questions right now? I won't count it against him. I want you to have your time. I don't have any questions. Okay. Thank you. All right. Ms. Ma, you're up. Good morning, Your Honors, and may it please the Court. My name is Frances Ma representing the U.S. Department of Labor. As Mr. Buss stated, in Integrity v. Staffing, the Supreme Court set out the test for determining whether an employee's preliminary and post-preliminary activities are compensable under the FLSA. Applying that integral and indispensable test to the facts of this case, it's clear that the time that these call center agents spent booting up or logging into computers is compensable. As Mr. Buss stated, call center agents' principal activities are to provide customer service and scheduling functions for a recycling appliance business. So are you limiting your view to people that are doing customer service? If it's just people that are telecommuting and working at home, what's the Department of Labor's position on that? Well, this particular case is about call center agents providing customer service. The Department of Labor's view on other people working at home, for example, would really be dependent on the facts of the case. It's a very fact-specific inquiry, and it would depend on specifically the productive work that an employee is employed to perform as laid out in Integrity v. Staffing v. Buss. Why isn't this like waiting in line to put on the protective gear that's necessary to do the job, like the IPV case? Well, IBP v. Alvarez made a distinction between the waiting and walking time that occurred after the workday started and the waiting time that occurred before the workday started. So the waiting that is occurring here is after the first principal work activity has begun, which in this case, the critical activity is starting up or logging into a computer. So everything that follows the beginning of that first principal activity would be part of the continuous workday until the end of the last principal activity. So you're saying that turning on the computer is a principal activity, because I thought your position was that it was, you know, intrinsic and therefore it had the necessary relationship to it. Well, yes, Your Honor. They are actually one in the same. Integrity v. Staffing essentially says that activities that are integral and indispensable to principal work activities are themselves considered principal work activities. And so the critical activity that we are talking about here is the starting up or logging into the computer, which then commences the compensable workday. So if some of the people that have really slow computers, they're really clunky, does an employer have to pay for the 20 minutes that it takes for their computer to come up, or how can they, you know, I mean, when you get these wage and hour cases, you know, they're a nightmare in terms of determining what the actual damages are. So the rule, what's the, is it, how do we apply the rule here? If you just have really bad equipment and it takes really long, does your employer have to pay for that? Or does your employer have to tell you you have to get a better computer to have this job? Or what, how does that work? Well, for call center agents in this particular case, yes, that time would be compensable. Because, again, the compensable workday is starting at the moment that they are attempting to activate their computer to work. Wasn't the computer equipment in this case provided by the employer? I believe that it is, Your Honor. I believe that there is a computer room of sorts where call center agents enter and go select a computer to activate. So do you have a position on whether this time is de minimis? We did not take a position on the de minimis doctrine in this case. Because the court really, the district court, decided this on whether the activity was integral and indispensable to the principal work activities. And so, you know, we do not think that there are enough facts in order to be able to affirm this judgment on the de minimis issue. All right. So your taking a position on this is very specific to this being a call center and not to people that telecommute from home? Yes, our position is specific to the facts of this case, which involve call center agents exclusively. All right. If you have anything else, you can use your other a minute, or else I'll cede it back to your co-counsel. Sure. I'd like to address a couple of defendant's points in their brief. You know, defendants repeatedly and correctly state that employees are booting up so that they may clock in. But the call center agents in this case are not booting up or logging into their computers so that they clock in. They're booting up so that they may perform their principal work activities. And, you know, I also think that defendants incorrectly characterized the pre-shift activity as waiting time, which I've addressed with Judge Collins. And the question in this case really isn't whether time spent waiting after the booting up or logging in is integral and dispensable to principal work activities. It is whether the activity of booting up or logging into the computer system is integral and dispensable to principal work activities. So any waiting that is taking place in this case is after the work day has already begun. And the further argument regarding lack of exertion or significant effort overlooks the fact that exertion is not necessary for an activity to constitute work under the FLSA as articulated in Skidmore v. Swift and Armour v. Wantock, as well as appellate case law. It's also not necessary under the bus test. If Your Honors have no further questions, I'll conclude. There doesn't appear to be additional questions. Thank you for your argument. Thank you, Your Honor. All right, we'll hear from Customer Connex. Good morning, Your Honors. Good morning. Veronica Hunter on behalf of appellees, if it please the Court. I think the first point that needs to be made crystal clear here is exactly what time is at issue and exactly the sequence of events because the representation that's been made during argument here is contrary to the record. So the very first thing, and this is undisputed in the facts. The plaintiffs before the District Court admitted it was not disputed. The very first thing all of the call center employees are instructed to do is clock in. That's the very first thing. How do you clock in? With a computer. Okay. If the computer's not on, then what do you do? If the computer's not on, then you must turn it on in order to clock in. Are the computers usually on? There's a variety of different stages that the computers might be in. But there were many people who testified that they usually shut down the computers at night, so you did have to turn them on. Actually, many people testified that the pattern with respect to turning off the computers was all over the board. Are they using the same computer every day? No, they're not, Your Honor. So it's different computers, so it's different practices, depending on who shut it down the night, who did or did not shut it down the night before. Correct. Who was the last person to touch it the night before. Yeah. That's right. If you've got a clock on the wall, the mechanical clock that Judge Collins was referring to, and somebody would forget, walk past it and forgot to clock in, you could begin work without clocking in. Then you'd have to call your supervisor and say, you know, my fault. I forgot to clock in, Steve. Can you help me and correct the time? I think I got here about 8. And you could make a mechanical change. You can't do that here, can you? I mean, you might be able to fail to engage in the program that would require you to clock in, but you could actually begin work here, but you're going to have to do it on the computer, aren't you? You do have to engage the computer in some way in order to work in the call center. That is correct. But if we look at the opinion in IBP. Doesn't that make the whole time entry thing kind of a red herring? Because it just happens to be that you put the time system on the computer. But if you need the computer to do the job, you cannot do the job without the computer up and operational. How is it not that ensuring that the computer is operational is integral to the principal task? How is that not the case? That's where the Supreme Court's opinion in the IBP case is informative, because it instructs us that although something may be necessary, that doesn't mean that it's integral and indispensable to be compensable. And in that case, the court compared this to, for example, walking from the front of a facility to somewhere else in the facility. Obviously it's necessary. You have to walk to your workstation. But under the Portal to Portal Act, that is not compensable. And in that case, the issue was that these individuals were claiming they should be compensated for the time spent waiting by the locker room to put on their protective clothing. And the court said that time is not compensable because you're just waiting. One of the frustrations that comes through this record is that the computers seem to be of varying quality. And so the claims as to how long it takes to boot up a computer vary quite widely. I mean, somebody said 20 minutes. I don't think I've ever had a computer that bad. I've had some bad computers, but I'll never remember one that was that bad unless it was malfunctioning. Even the court doesn't have them that bad. Yeah, not even we have ones that are that bad. And we have a very good IT staff, but sometimes you have to figure out where they are and get them to help you. But why isn't this the employer's risk? In other words, if we were to decide against Connix in this case, it might well be that Connix would come right back and say, well, if that's the way the court feels about it, we're just going to buy all new computers because we don't want you sitting around for 20 minutes wasting time. But it shifts the risk of the malfunction or the non-functioning of the equipment right where it belongs, to the people that own the computers, which turns out to be Connix. I've lost the audio. I'm not hearing anything. Yes. Okay, we'll come back. I want to be really fair about time, and I'll be fair to you about time. So I'm going to be an unusually generous person. So where were we, do we think, when all this started? Can we go back to maybe 11 minutes or something? And I'm going to have Judge Bybee repeat his question, his really good question. And then Judge Collins, you can hear okay? And Ms. Ma, you can hear okay? Everyone's okay? Okay, good. For Judge Collins' benefit, let me restate the question, Ms. Hunter, and I hope that you've had time to think about it in the meantime. The question was, if Connix is providing the computer equipment here, which I believe the record reflects that it does, and the computers are very in quality, the risk of the time should fall sort of on Connix. At least that's what I think the way the economists would view it. Whether the lawyers will view it that way remains to be seen. If each of the employees had to provide their own computer, then sort of the risk of the boot-up time would fall more squarely on the employees. But these are Connix's computers. So why isn't sort of the economic solution here? Because I think if we impose liability here in this case, Connix might well decide tomorrow to buy a whole new set of computers for the office. Thank you, Your Honor. So I just want to first point out that the 20 minutes that you referred to, those are the outliers. It's very clearly an outlier, and I've never seen a computer that took 20 minutes to boot up. I think one of the name plaintiffs said once in a blue moon is how often that happened. So most testified that it was a few seconds or a few moments for the computer to boot up. And when it did take longer, on those occasions of perhaps when it did take 20 minutes, Connix had a process whereby employees could submit a time punch change form or request to have the time paid. And so the burden of an overly slow computer in that instance or maybe some glitching computer. So it can be corrected by hand, but why should it be corrected by hand? Why put that on the employee to have to go and say, it took five minutes longer today than it usually does for me to boot up my computer. Would you pay me for that? I mean, it feels a little bit de minimis, and the de minimis questions are questions of fact that I'm not prepared to decide today. But it also feels like the burden is sort of on the wrong place. The record doesn't reflect how often this happened. If some people said it happened once in a while, that it would take more than a few moments or seconds. And as I said, one of the name plaintiffs himself said it once in a blue moon. So it was rare that it was taking more than just a very small amount of time. But if somebody can submit a request and say that, you know, it's taking a long time for the computer to boot and I really should have my time adjusted to that. Isn't that a concession that it is integral and that really the only issue is whether or not it's de minimis? Not necessarily. I'm not saying that that connects was compelled or required to pay that time that they chose to do. It doesn't necessarily mean that it was compulsory. The other question I had about the IPV versus Alvarez case, there's this discussion at the end of the opinion about a particular regulation. And it's 790.7 H, which states that when an employee is required by his employer to report at a particular hour, it is work venture other place where he performs his principal activity. If the employee is there at that hour, ready and willing to work, but for some reason beyond his control, there is no work for him to perform until some time has elapsed. Then waiting for work would be an integral part of the employee's principal activities. That's what the regular and then the court said that regulation would be applicable. If Barbara required its workers to report to the changing area at a specific time, only to find that no protective gear was available until after some time had elapsed. But there's no such evidence in the records case. Isn't this case more like the exception or the situation that Alvarez distinguished away? Because they arrive at their workstation and due to circumstances beyond their control, they have to wait until they're able to perform the job duties. And so I don't see why under that, that doesn't indicate that Alvarez cuts against you. Well, recall that in Alvarez, the court determined that the donning and doffing, the actual donning and doffing itself was compensable. And so what you had were people coming to the locker room, the workspace where they were to be then performing this compensable activity of donning and doffing, and they sometimes had to wait in order to be able to do that donning or doffing. So they're actually at their place of work, the locker room, where they're going to don and doff, and they have to wait. And presumably they had a scheduled start time. That's why they're showing up at that particular hour to start the donning and doffing process. And I don't think that's any different than what you have here with Connex. I mean, certainly people had scheduled start times. There was a window of time in which they could arrive. But the locker room isn't the workplace. These people are at their workstation, ready to go. And oh, the computer's being slow and I can't do anything about it. I've just got to wait. At that point, I'm doing the job, but I have to wait due to the circumstance at the workstation. The locker room isn't the workstation. Well, I would proffer that in that situation in Alvarez, because they were going to be doing compensable work, the donning and doffing at the locker room, that waiting at the locker room was, in fact, their workstation. And I want to be clear, too, here. So, you know, we're talking about pushing a computer button. And there is evidence in the record that people might push the computer button and then go off and get a cup of coffee and then come back and the computer's up. Well, okay. I guess, though, your business model, these people, it is that they work at home, you give them a computer, and that's the way it works. It's not a situation where, let's just say you have a call center and people can go to the call center and work there, or if they want to request working at home, then you give them a computer, or they use their own computer at home. It's not that. Your whole business model is everyone works at home with your computer. Is that right? No, Your Honor. This is a call center. So during COVID aside, this was a call center room. So the individuals would come into the call center. There were a variety of workstations available to them. They got to pick. It's like Southwest Open Seating. You pick what seat you want to go to. So normally people would be at, during COVID, normally people would be at the call center. That's correct, yes. So it's not your business model that people just do it from home? Not as pertinent to this case. Well, I'm just trying to think in terms of rules, you know, in terms of what the rules are, because there's obviously going to be a lot of people that now could be at work or can work at home, and maybe that's a different situation, whether you're using your employer's computer and that's when the work time starts, or you're using your own computer and you're asking to telecommute as far as that goes. And I think, Your Honor, that's the problem here, is that the position, the application of BOSC Integrated Services to these facts would result, that the appellants are proffering, would result in a wide swath of people now suddenly being compensated or claiming that they need to be compensated from the moment they press the button, from the moment they wiggle their mouse. But that's when, that's how they start their job. There's no other way to start the job other than by pressing the button. Now, if Connex wants to instruct them not to boot out at night so that the computers are all ready to go in the morning, that's their business. Or they could hire a manager to come in five minutes before everybody comes in and go and push all of the buttons. You could also compensate for the time walking away to go get the cup of coffee and come back by instructing them that during the time they're booting up that they should be doing some other task, some other employer-related task, so they're not off getting coffee. There's not a whole lot they can do during that time if it has to involve a computer, but there may be other things that they could do that have to be done manually. But that seems to me that those are management problems, and the risk really falls on the management to be able to figure out what to do at that time. Well, I would say, Your Honor, given the small amount of time that we're talking about here and that simply turning on a basic common desktop computer, which all of us, everyone practically uses as part of if you have an office-type job, that's what you're using, right? There's nothing specialized about that. Simply turning it on, waiting for it to come up, and then clocking in. All the rest of the time, I want to point out, from all of the specialized computer programs that they must load in order to access the phones and do their work, all of that is compensated. We are only talking about the time from somehow engaging the computer to clocking in. That's the only time it's not compensated. Is your argument then that that's de minimis? Well, yes, Your Honor, it is de minimis. But how do we judge that here? Well, in this instance, the record shows that the amount of time was varying from a few seconds. And so how much time are we talking on average? I don't think there's a reliable way to calculate an average in this case. So then wouldn't it have to go back to the district court for that? I mean, in terms of if you lose on, if we don't agree that summary judgment was appropriately granted here, that it has to go back, wouldn't it have to go back to the district court to do the de minimis calculation? Well, the court did make a fact finding that goes straight to the heart of the de minimis issue, and that is the factual finding that the time at issue here ranged from a few moments, from a few seconds, to upward to 20 minutes. And that the amount of time... So let's take the 20 minutes. Is 20 minutes de minimis? Well, the rule of thumb under the case law is that 10 minutes is de minimis. And when it did go to 20 minutes, Your Honor, as the record shows, on the rare occasions that happened, individuals could submit and be compensated for that time. There was a mechanism to correct that. But the record also shows, and the district court judge made a finding, that the amount of time varies for multiple different reasons, too, depending on the time of day, the shift, the computer itself, the state of the computer, and that this wasn't something that happened every day, that there was this time at issue. Counsel, on the 10 minute as de minimis, where does the 10 minutes come from? There's... A regulation or a case? There are cases cited, Your Honor, I believe in Coben. And if that were 10, is that 10 minutes... Let's just take the 10 minutes as a proxy here. If we thought that it was 10 minutes, is that 10 minutes in the morning and 10 minutes at night? Well, I will say, so I think that's an important distinction to make here. So there's these morning activities, right, about engaging the computer and clocking in. Right. And the court will find as it will on that. But at the end of the day, there is no reason why they need to shut off the computer in order to answer phone calls or schedule appointments. The record shows that there was no such... Are they required by their employer to shut the computer down? There were maybe two people who testified that someone told them sometime, but the vast majority said they weren't. But we ought to be able to figure that out pretty quickly, right? I mean, if somebody said, gee, we're not sure what to do with this call center, somebody in corporate can say, let's post a sign that says, don't shut them down at night. There is testimony that there was no... from corporate and also from the vast majority of the plaintiffs that there was no requirement to shut down their computer, that many of them did not shut down their computer. Or if they did shut down their computer, all they did was punch the button and then they're out of there, like I'm going home. So I think the end-of-the-day activities are conclusively not compensable under integrity staffing solutions. So let's suppose that the average was 10 minutes. Again, we'll just take that as a proxy, and it was only in the morning. Is that de minimis? I believe under the facts of this case it is, Your Honor. That would be 50 minutes a week. But the record doesn't support that it happened that every person every day had 10 minutes. I'm just taking 10 minutes as a proxy. If the evidence showed that it was 10 minutes, is that really de minimis? That's 50 hours. That's just under an hour a week. These folks are compensated, what, $15 an hour? I would say, Your Honor, if it happened every day for every person in just that way, but that is not the fact. Those aren't the facts that we have before us right now. But the facts we have here is that it was sometimes instantaneous. The computer would come up right away, so no time. Sometimes it was less than 30 seconds. Even the testimony cited by appellants in their record shows a range from 3, 4, 5, 10, 30. It's all over the board. And I think that strongly supports de minimis finding because there's no regularity to the time. There is no way for Connex to track it. They don't have a timekeeping system, unlike some of the other cases that have been cited. They don't have a mechanism to track that time. If we were to disagree with Judge Gordon here, how would you keep track of the time? Well, we have to take the timekeeping system as it's presented, right? The Fair Labor Standards Act does not have a requirement for a specific timekeeping system, and so we use the timekeeping system evaluated in the circumstances. But if you have to boot up the computer in order to get to the timekeeping system, how do we compensate? If we said, one, you have to compensate them for this, and two, it's not de minimis. So take the worst scenario. Then physically, how do we do that? Walk me through how you would have to compensate these folks. Well, I think that's the administrative burden angle, Your Honor. That's the trouble here in terms of being able to record the time. And I'm going to suggest you'd have to go back to the clock on the wall. Well, and that's where the Fair Labor Standards Act doesn't mandate that we have to have a particular type of timekeeping system. Sure, but it might be for the employer's convenience. I mean, the employer might decide at that point that it was more convenient to have a clock. Well, and consider there are many, many, many companies that use computerized timekeeping systems like this. And so we would now be saying that we'd be inviting claims from everyone who has this type of timekeeping system across the world. Or inviting employers to make sure they have really up-to-date equipment. Well, I think that those timekeeping systems are generally considered the state-of-the-art timekeeping systems. But I hear what you're saying, Your Honor. I just think that this sort of broad-cut, wide swath of claim that's being invited by appellants for individuals who use a computer for work and then also must use a computerized timekeeping system is exactly the sort of issue that Congress was intending to stop when it enacted the Port of the Portal Act. I'm sure you're familiar. Unless my colleagues have additional questions, we've gone significantly over. So, thank you. Thank you, Your Honor. All right. So, Mr. Buck, I'm going to give you five minutes for rebuttal. And I do have, if either of my colleagues, in light of some of the questions you were asking, Judge Bybee, if either of you wanted to ask Ms. Ma any questions, that's fine, too. All right. Go ahead. Thank you, Your Honor, for the additional time. I appreciate it. I want to focus in my rebuttal on, again, clarifying the facts of this particular case. The facts in this case, the calls to their employees are not remote workers. This is a pre-COVID case. This case concerns people who actually show up to a physical location that is owned and operated by Customer Connects. Customer Connects supplies all of the computer terminals for which employees use to carry out their work duties. The record is full of testimony from appellants stating how old these computers were, how clunky they were, how many times it took to update and re-update and start and restart the computers. It is, as Justice Bybee was suggesting, Customer Connects made the decision, an economic decision, to not provide its employees with up-to-date computer systems. Indeed, one particular appellant said, I was using the same computer that I was using when I was in high school. He didn't specify when he was in high school, but you can surmise that it was a while ago. The other issue that came up briefly with Justice Bybee's question is how do you fix the problem, essentially? The testimony, again, is in the record. An appellant even says, and this is at the Kenyon deposition at app 2073, he says, you know, most companies have a time clock when you walk in the door. You clock in. They did not do it that way. You have an electronic clock in a device. It's just a whole slew of problems, you know. So, again, this is the decision that Customer Connects made, and then because of this decision, we have the situation we have here. The other thing I want to focus on with the facts in the record, as you sit here today, is, first, the district court never addressed the de minimis argument. It would be, frankly, in our opinion, inappropriate for this court to resolve facts and to determine how much time is at issue here in the first instance. But even if this court did peek into the record, it can see that the amount of time that appellants have testified under oath that it took for them to engage the computer ranged anywhere from 6 to 12 minutes before they clocked in and from roughly, I think it was 3 to 6 minutes at the end of the day. Let me ask you this, though, just in terms of constructing a rule. If the call center were not a physical place, if it's that, you know, you clock, you go on your, you know, they give you a computer, you can do it from your house, and you log in from your home, does the same rule apply there than if you're physically in the call center? I think the rule requires that, again, if the computer, if we meet the integrity of the bus standard, if it is integral and indispensable to the principal work activities of the particular employee, then beginning and loading and updating the computer and uploading applications would be compensable, and an employer would be able to have an employee record their time and instruct the employee to record the time as of the date that you begin with the computer. That's not the facts in this case. So whether you're physically in a call center or whether you're in your home, the same rule applies? I believe that would be the rule. Again, Your Honor, we're dealing in this particular case solely with the call center where people are showing up to. This is not a remote situation, so we don't have to deal with those facts in this particular case. But, again, when an integrity bus says that when you have a particular activity that is integral and indispensable, meaning you cannot dispense of the activity without affecting your ability to do your job, then payment and compensation is required. And I'm open for any other questions that the panel may have with respect to the law or with respect to the facts in this case. I don't want to appear to have any additional questions. Thank you. Do either of my colleagues have any additional questions for Ms. Ma? All right, we don't. Thank you all for your argument today. That was helpful. And this matter will stand submitted, and the court will be in recess until tomorrow morning at 9 a.m. Thank you. All rise.
judges: BYBEE, CALLAHAN, COLLINS